Filed 3/8/24  Singleton v. County of San Bernardino CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DEVIN SINGLETON et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>COUNTY OF SAN BERNARDINO et al.,<br><br>    Defendants and Respondents. | G062733<br><br>(Super. Ct. No. CIVDS1612940)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Gilbert Ochoa, Judge.  Affirmed.

Decker Law and James D. Decker for Plaintiffs and Appellants.

Smith Law Offices, Douglas C. Smith, Alan Diamond and Julian V. Lee for Defendant and Respondent.

\*        \*        \*

This is a civil case that arises from a child welfare case.[1] A social worker removed plaintiff/minor N.G. from the custody of plaintiff Devin Singleton based on allegations of sexual abuse by Singleton against N.G. After further investigation, those allegations were deemed unfounded and N.G. was returned to Singleton's custody. Afterward, Singleton and N.G. (through Singleton as her guardian ad litem) sued San Bernardino County (the County) and Jessica Pichette (the social worker) for intentional infliction of emotional distress as well as violation of their civil rights pursuant to section 1983 of title 42 of the United States Code (section 1983).[2] As to the claims against the County, the court entered a directed verdict following the presentation of evidence. On the remaining claims against Pichette, a jury returned a complete defense verdict, following which plaintiffs appealed.

Plaintiffs raise two issues on appeal.

First, they contend the court erred by admitting evidence that N.G. is the offspring of Singleton and his first cousin. Plaintiffs contend this unusual relationship served only to inflame the jury.[3] We find there was no abuse of discretion in admitting the evidence. Singleton was alleged to have engaged in sexual conduct with N.G.'s mother, his first cousin, when she was a minor. This allegation was certainly a relevant factor for the social worker in assessing the plausibility of the current allegations, which also involved sexual conduct with a minor family member. Because Pichette's honesty and bona fides were at issue, it was important for the jury to be given the complete set of information that Pichette had when she decided to pursue removal of N.G.

---

[1] Formerly known as juvenile dependency.

[2] Throughout this opinion, we refer to Singleton as the plaintiff, though, where appropriate, those references should be understood to include N.G. as well.

[3] We refer to this as unusual because, under Family Code section 2200, it was not technically incest.

Second, plaintiffs contend the court erred in directing a verdict in favor of the County. Plaintiffs' claim was that the County had policies in place that served to unnecessarily extend the duration of N.G.'s removal from Singleton's custody. We agree with the trial court that no evidence admitted at trial supported plaintiffs' claim the allegedly offensive policy made any difference to the duration of N.G.'s detention. Accordingly, we affirm.

FACTS

*The Child Welfare Proceeding*

On August 27, 2015, N.G.'s mother called San Bernardino County Department of Children and Family Services (DCFS) hotline to report possible sexual abuse of her daughter N.G. by the minor's father, Singleton, and neglect by the mother, i.e., herself. N.G.'s mother told the hotline that last night she caught N.G. with her hands in her underwear going up and down in a circular motion, and when the mother asked what she was doing, N.G. quickly snatched her hands out of her underwear. When asked, N.G. told her that "'daddy does it.'" She further reported N.G. told her "'daddy touched me and it's not nice' referring to her private parts."

N.G.'s mother expressed concern "because father has a history of sexually abusing young females." She explained that "she and father are first cousins," and he first molested her when she was 6 years old and Singleton was 13 years old; and when she was 15 years old and Singleton was 21 years old, he pursued her and they began a relationship for 10 years "and had [N.G.]" N.G.'s mother stated Singleton is a good father and he cares for N.G. very well, but she was concerned about the sexual abuse because father did it to her, and she wanted someone to speak to N.G. to assure no sexual abuse was occurring. N.G.'s mother explained she and Singleton had joint physical and legal custody of N.G.

3

On August 31, 2015, social worker Pichette was assigned to investigate the emergency response referral based on the information taken down by the hotline and was told that the referral was being treated as at the highest urgency, "which means you go right now, because of the allegations." When she got the assignment, it was around 2:30 p.m., and Pichette knew from the hotline information that N.G. would be leaving daycare with Singleton at 5:00 p.m., so it was urgent she go out and investigate at once "just to make sure this child is not going home to a person who may be molesting them."

Pichette (accompanied by a trainee) drove out to N.G.'s daycare and interviewed her for about 20 minutes. Pichette testified N.G. "knew where her private parts were," pointed to them, and in response to Pichette's question whether anyone has "ever done anything to your private parts," "she put her head down and said, My daddy said not to tell." Upon further inquiries, N.G. "said, My daddy touched that" and "said, He do it to me, and I do it to him, with her hand like this (gesturing)"; and said that it only happened "[a]t my daddy's."

Afterward, Pichette consulted with her supervisor, and they decided to apply for a warrant to remove N.G. from Singleton's custody, which Pichette submitted under penalty of perjury. After further questioning of Pichette under oath in chambers, the court signed the warrant.

On September 2, 2015, Pichette filed a juvenile dependency petition, alleging that Singleton had sexually abused N.G., and her mother had been neglectful in permitting it to happen. In an ensuing detention report, Pichette recommended removal of N.G. from her parents' custody. Singleton denied the abuse and claimed N.G.'s mother was fabricating the story and coaching N.G. in order to obtain full custody.

On September 3, 2015, the juvenile court held a contested hearing on whether N.G. should be detained. The court ordered N.G. held for detention out of home and continued the matter until September 24, 2015.

After the September 3 detention hearing, Pichette's involvement with the case ended and Mary Jane Walker-Coleman took over the case. After a review assessment meeting, she was assigned to write the jurisdictional dispositional report. That required her to do her own investigation.

Walker-Coleman interviewed N.G. on September 10, 2015. She had a "feeling" the mother coached N.G. based on the history between N.G.'s parents, but mostly she doubted the sexual abuse allegation because of "N.G. not repeating anything when I interviewed her." N.G. did not repeat "that she was molested, nor did she repeat to the foster parent or demonstrate any behaviors." Rather, N.G. answered in the negative when asked if anyone touched her "butt" or "touched in any area that her bottom bathing suit covered" and otherwise turned the conversation away from anything bearing on that subject, and Walker-Coleman "did not pursue the questioning any further due to the Forensic Interview already being scheduled." After her file review and interview with N.G., Walker-Coleman was 90 percent sure N.G. had not been sexually abused. However, she understood there was a nontrivial chance that she could be wrong—for example, sometimes children just do not talk, or there was a chance that Singleton could have tainted N.G. as a witness by threatening her. For that reason, in such circumstances, she always relies on a forensic interview by the Children's Assessment Center (CAC), who Walker-Coleman regarded as "professionals," to make a factual determination of what happened. Unless a child "immediately reveal[s]" to her, Walker-Coleman "[felt] forensics is the best choice."

Given her opinion, Walker-Coleman sought "special permission" from her supervisor to seek a continuance of the September 24 hearing until after CAC made its findings but was refused because "normal policy" was not for social workers to ask for continuances but "to follow what the court sets as the date." The "standard practice" if a social worker wanted a continuance was to "bring County Counsel into the discussion, because County Counsel represents the social worker and the Department in the hearing." Walker-Coleman's request for an exception to the policy was denied.

Walker-Coleman then wrote and submitted the jurisdictional dispositional report indicating there was a factual basis that the sexual abuse occurred and recommending that the court find the allegations of sexual abuse true. As she testified, "It was substantiated because in the Juvenile Court you either have substantiated or unsubstantiated allegations. Until I have the last piece of the CAC interview, it was still considered substantiated."

At the request of county counsel, the court continued the matter to October 16, 2015 "to allow for CAC report to be completed." The court did not make any jurisdictional findings at that time.

N.G. had her CAC interview on September 29, 2015. During the interview, N.G. did not reveal any sexual abuse. Shortly afterwards, N.G. was removed from foster care and placed with her aunt, Singleton's sister.

Shortly after, Walker-Coleman prepared and signed a First Addendum Report wherein she described the details of the forensic interview and concluded "there is no evidence that the child was sexually molested in the care and custody of the father." In the First Addendum Report, Walker-Coleman recommended the case be dismissed and N.G. returned to her parents under the terms of the existing San Bernardino Superior Court family law orders.

However, at the October hearing (held on Oct. 20, 2015), after counsel for the mother and counsel for N.G. contested N.G.'s return, the court continued N.G.'s

6

detention and set a jurisdictional dispositional hearing for October 29, 2015 (which was ultimately held on Nov. 12 & 13). After the two-day November hearing, the court followed the recommendations in the first addendum report to return N.G. and dismiss the allegations against Singleton. Henceforward, the family law order that was in effect determined visitation and custody.

*The Underlying Civil Complaint*

The operative complaint is plaintiff's first amended complaint against defendants the County and Jessica Pichette. Plaintiffs assert four claims under section 1983: first amendment interference with familial relations against both defendants; fourth amendment detention of minor child against Pichette; violation of procedural and substantive due process against both defendants; a section 1983/*Monell*[4] claim against the County; and a state claim against both defendants for intentional infliction of emotional distress.

The County moved for summary adjudication on the issue of *Monell* liability. The trial court denied the motion. It found a disputed issue of fact as to whether San Bernardino DCFS had a policy that required a social worker to make a dispositional recommendation well before the legal deadline for doing so, even if the social worker had serious reservations about that recommendation.

Prior to trial, plaintiffs filed a motion to exclude evidence and/or testimony regarding what plaintiffs termed the "incestuous relationship of minor's biological parents." The court denied the motion on the ground that the "incestuous relationship" was disclosed to the social workers and formed part of the factual milieu that the county was working off. At no time during trial did plaintiffs renew their in limine objection to

---

[4]     *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*).

7

the admission of or reference to the fact that Singleton and N.G.'s mother were first cousins, or ask for any limiting instruction with regard to testimony or documents.

The trial began on May 20, 2021. On July 12, 2021, just before closing arguments, the County made an oral motion for a directed verdict on the section 1983 claims against the County as they pertain to Walker-Coleman recommending a finding of child sexual abuse when she was 90 percent sure it was not true. The court granted the motion, adopting the County's arguments. The County had argued that there was no causation of damages in that what Walker-Coleman had sought was a continuance, and that is exactly what happened: county counsel sought and obtained a continuance. The fact that Walker-Coleman recommended sustaining the allegations, therefore, caused no harm.

The jury returned its special verdict on July 13, 2021, on the remaining claims. It found that Pichette had not done anything unconstitutional, nor had Pichette done anything outrageous to support a claim of intentional infliction of emotional distress.

Singleton and N.G. timely appealed.


DISCUSSION

Singleton raises two issues on appeal. First, he contends the court prejudicially erred by allowing testimony that Singleton and N.G.'s mother are first cousins. Second, he contends the court erred in granting a directed verdict in favor of the County.


*Evidence of the First-cousin Relationship*

Singleton contends the court erred by denying his motion in limine to exclude evidence of the first-cousin relationship between himself and the mother. That motion was made under Evidence Code section 352 on the ground that such evidence was

8

unduly prejudicial. We review the court's ruling for abuse of discretion. (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1493.)

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ." (Evid. Code, § 352.) "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, abrogated on other grounds in *People v. Leon* (2020) 8 Cal.5th 831, 848.)

We find no abuse of discretion here. On the verdict form, the jury was tasked with deciding, among other things, whether Pichette's conduct was "lawful and consistent with community standards." It was also tasked with deciding, "Did [Pichette] have a good-faith belief that she had a legal right to engage in the conduct?" The jury was further asked whether Pichette acted recklessly in making false statements that led to N.G.'s detention. In deciding whether Pichette acted recklessly, or in good faith and in conformity with community standards, the jury had to be given *all* of the information that Pichette was aware of, including the information that Singleton had previously sexually abused a minor family member, as he was accused of doing here. That was certainly relevant in deciding whether N.G. was in sufficient danger to justify detaining her. While evidence of Singleton's and the mother's quasi-incestuous relationship was certainly inflammatory insomuch as it contravenes society's sexual norms, we cannot say it was so inflammatory that the court abused its discretion in deciding that the prejudice substantially outweighed the relevance of this information. Nor is there any indication in

9

the record that the jury gave inordinate consideration to that evidence. Accordingly, there was no error.

*Directed Verdict in Favor of the County*

Singleton contends the court erred in directing a verdict in favor of the County on his section 1983 claims. "'A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party. . . .' [Citation.] On appeal from a judgment based on a directed verdict in favor of the defendant, we review the evidence in the light most favorable to the plaintiff, resolving all conflicts and drawing all inferences in its favor and disregarding conflicting evidence. [Citations.] We must reverse the judgment if substantial evidence exists that would tend to prove each of the elements of the plaintiff's case." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1119.)

A cause of action under section 1983 requires proof of five elements: 1. That defendant committed a wrongful act; 2. that defendant was performing an official duty; 3. that defendant's conduct violated a federal right; 4. plaintiff was harmed; and 5. the wrongful act was a substantial factor in causing plaintiff's harm. (CACI No. 3000.)

The liability of a county for the violation of a constitutional right under section 1983 is governed by *Monell, supra,* 436 U.S. 658. *Monell* held that local governments and their officials do *not* have immunity under section 1983. (*Monell*, at p. 690.) However, there are limitations on liability. Local governments are not subject to respondeat superior. (*Id.* at p. 691.) Instead, their liability must be based on an official policy or custom that resulted in a deprivation of the plaintiff's federal rights. (*Id.* at pp. 690-691.)

10

Here, the policy that Singleton claimed resulted in a violation of his and N.G.'s constitutional rights was the policy forbidding a social worker from asking for a continuance, and instead requiring the social worker to prepare a report with recommended findings. He argues: "[T]he Count[y]'s policy is such that it forces its social workers to make premature, uninformed recommendations." "[A]s a direct result of the County's actions and policies, N.G. was detained for 74 days (from August 31, 2015 to November 13, 2015), thereby depriving Appellants of their right to familial relations, and N.G. of her right to be free from unlawful seizure. Moreover, Appellants' right to be free from judicial deception was violated insofar as Walker-Coleman falsely indicated that the allegations of sexual abuse against Singleton were true, even though she herself did not believe that." "The detention would *presumably* have ended sooner had Walker-Coleman not stated in her first jurisdiction/disposition report that the allegations of sexual abuse were substantiated—which, again, was a conclusion that she herself did not believe to be true." (Italics added.)

The fundamental problem with this argument lies in that presumption. In fact, the record is quite clear that Walker-Coleman had no intention of recommending that N.G. be immediately released. Her sole intention was to have the proceeding continued. In other words, if the County had not enforced the allegedly offending policy, the only difference would have been that the report would have recommended a continuance. Although the actual report recommended that the court find the allegations against Singleton true, the court did not make those findings at the September 24 jurisdictional hearing. Instead, the court continued the matter until after the forensic interview was completed, which was exactly what Walker-Coleman had wanted, and exactly what would have happened in the absence of the County's policy. After the forensic interview, Walker-Coleman immediately amended her recommendation. Any further delay from that point was due to opposition from mother and minor's counsel. In other words, Walker-Coleman's report made absolutely no difference to the duration of

11

N.G.'s detention.  Accordingly, the report did not result in a deprivation of familial relations or unlawful seizure.  And assuming the right to be free from judicial deception was violated, it did not cause any harm.  The trial court did not err in granting a directed verdict.[5]

DISPOSITION

The judgment is affirmed.  The County and Pichette shall recover their costs incurred on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

---

[5] Singleton complains that the trial court had previously denied a summary adjudication on this same issue, finding disputed issues of fact.  However, he has not cited any authority that the previous ruling was binding on the court for purposes of a directed verdict.  Although the legal standards governing the two motions are similar, the two records are very different.  And the court's greater familiarity with the case after a full trial may endow it with a deeper understanding of the issues, resulting in a different ruling.

12